UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED COIN MACHINE CO., a Nevada Corporation ) ) | |
| ) | 3:08-CV-0466-LRH-RAM |
| Plaintiff, ) ) | |
| v. ) ) | <u>CLAIM CONSTRUCTION ORDER</u> |
| ARDENT PROGRESSIVE SYSTEMS AND ) GAMES, LLC, a Nevada Limited Liability ) Company; et al., ) ) | |
| Defendants. ) ) | |

**I. Introduction**

This is a claim construction order for United States Patents numbers 6,763,998 and 6,896,180.[1] The parties have submitted eight terms and phrases for construction. A full round of claim construction briefing on the patents and a *Markman* claim construction hearing preceded this order.

Plaintiff United Coin Machine Co. ("United Coin") is a gaming route operator which services customers in Nevada, particularly bars and supermarkets. As part of its business operations, United Coin installs gaming cash dispensing systems in its customer locations. United Coin has two patents for gaming cash dispensing systems; the '998 and '180 patent. Both patents

---

[1] This order will hereinafter refer to each patent as the "'XYZ patent," where XYZ refers to the last three digits of the number identifying the patent (e.g., the '998 patent).

relate to a system and method for securely storing and controlling the dispensing of payouts resulting from the play of games on gaming machines. The '180 patent is a continuation of the '998 patent.

Defendants Golden Gaming, Inc., Golden Tavern Group, LLC, and Golden Route Operations, LLC (collectively "Golden") and defendants Herbst Gaming, Inc. and E-T-T, Inc. (collectively "Herbst") also operate gaming route businesses throughout Nevada. Golden and Herbst have likewise installed cash dispensing systems throughout their locations.

On August 28, 2008, United Coin initiated a patent infringement action against Golden and Herbst alleging that defendants are directly and/or indirectly infringing various claims of its '998 and '180 patents. Doc. #1. United Coin seeks to enjoin defendants' allegedly willful infringement and recover money damages. *Id*.

After carefully considering the briefs and other materials submitted by the parties, the record before the court, and the arguments of counsel at the claim construction hearing, the court issues this order construing the disputed claim terms.

**II. Legal Standard**

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). Accordingly, the purpose of claim construction is to "determin[e] the meaning and scope of the patent claims asserted to be infringed." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). The court, rather than the jury, must resolve a dispute raised by the parties regarding the proper scope of the claims. *O2 Micro Intern. Ltd. v. Beyond Innovation Tech. Co., Ltd.,* 521 F.3d 1351, 1360 (Fed. Cir. 2008) (citations omitted).

The "objective baseline from which to begin claim interpretation" is "the ordinary and

customary meaning of a claim term." *Phillips*, 415 F.3d at 1312-13.  This refers to "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Id.* at 1313.  The patent is read "not only in context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.*

In certain cases, "the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314.  In other cases, the claim term may have a particular meaning in the field of art that is not immediately clear.  The court must examine those sources available to the public to show what a person skilled in the art would have understood the disputed claim language to mean. *Id.*  Those sources include "words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." *Id.*

The claim language bears considerable importance to the claim interpretation. *Vitronics v. Conceptornic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).  The claims themselves can provide substantial guidance to the meaning of a claim.  *Phillips*, 415 F.3d at 1314-15.  The "context in which a term is used in the asserted claims can often illuminate the meaning of the same term in other claims." *Id.* at 1314.  Furthermore, "the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim." *Id.* at 1315.

The claims must also be read in view of the specification.  "[T]he specification 'is always highly relevant to the claim construction analysis.  Usually it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id.* (quoting *Vitronics*, 90 F.3d at 1582).  The specification, as required by statute, describes the process of making and using the invention, and "[t]hus claims must be construed so as to be consistent with the specification, of which they are a

3

part." *Merck & Co. v. Teva Pharm. USA, Inc.*, 347 F.3d 1367, 1371 (Fed. Cir. 2003). When scrutinizing the specification, however, a court must distinguish "between using the specification to interpret the meaning of a claim and importing limitations from the specification into the claim." *Phillips*, 415 F.3d at 1323. Only the former is permissible.

Additionally, the court may also consider the prosecution history, which includes the record of proceedings before the Patent and Trademark Office (hereinafter "PTO"), including any references to prior art cited during prosecution. *Id.* at 1317. The prosecution history can demonstrate how the PTO and the inventor understood the patent. *Id.* In particular, the court should exclude any interpretation disclaimed by the inventor during the patent's examination. *Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1384 (Fed. Cir. 2005). The purpose of this rule is to "protect[] the public's reliance on definitive statements made during prosecution by precluding patentees from recapturing through claim interpretation specific meanings [clearly and unmistakably] disclaimed during prosecution." *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323-24 (Fed. Cir. 2003) (citations and internal quotations omitted).

Finally, a court may also consider extrinsic evidence, such as dictionaries, expert and inventor testimony, and learned treaties to construct a claim term. *Phillips*, 415 F.3d at 1317, 1319. However, their use should be limited to edification purposes: "while extrinsic evidence can shed useful light on the relevant art, the Federal Circuit has explained that it is less significant than the intrinsic record in determining the legally operative meaning of claim language." *Id.* at 1317 (citations and internal quotations omitted).

Based on the foregoing principles, the court will examine the disputed claim terms appearing in the patents in suit.

### III.   Claim Construction

On July 23, 2010, after the court's *Markman* claim construction hearing, the parties filed a stipulation outlining their proposed construction of certain terms appearing in the '998 and '180

patents. Doc. #81. The parties have stipulated to the construction of the following terms: (1) payout dispenser; (2) terminal; (3) local; (4) communication link; and (5) network. *Id*. The parties further stipulated that the term attendant, present in both patents, requires no construction by the court. The court has reviewed the stipulation and shall embody those constructions in this order. Therefore, those terms shall be construed as follows:

> <u>Payout Dispenser</u>: "A device for storing and dispensing a payout that may not be readily pried open or easily accessed by an unauthorized user."
>
> <u>Terminal</u>: "An electronic device that may be able to process data, such as a computer, with which the payout authorizing attendant has the ability to communicate in connection with the dispensing of a payout from the payout breakage device and/or payout dispenser, and that may be connected to the payout dispenser through elements such as ports."
>
> <u>Local</u>: "On-site at a gaming location."
>
> <u>Communication Link</u>: "Connecting two or more devices with network elements, including but not limited to data lines, wireless connections, or fiber optic connections."
>
> <u>Network</u>: "A multi-node arrangement of devices connected together with communication lines, including but not limited to, data lines, wireless connections, or fiber optic connections."

However, the parties request the court construe the three remaining terms at issue in the patents: (1) payout; (2) payout breakage dispenser/device; and (3) central. *See* Doc. #81. Where it would be helpful, representative claims are reproduced at the beginning of the discussion for each claim with added emphasis on the terms in dispute.

///

///

5

**A. Payout**

*Claim 1*

> 1. A system for securely storing and controlling the dispensing of a **payout**, comprising:
> > a payout dispenser, for securely storing and dispensing a **payout**;
> > a terminal, for controlling the dispensing of the **payout** adapted to be connected to the payout dispenser and to interface with a payout authorizing attendant in connection with the **payout**; and
> > a network for interconnection the payout dispenser and the terminal.

| PROPOSED CONSTRUCTIONS[2] | |
|---|---|
| **United Coin** | a payout may comprise paper money currency, paper scrip, a coupon, or any other desired item to be dispensed and may constitute payment of all or part of an amount to be paid out, and/or may enable payment of all or part of an amount to be paid out as a result of play of a game on a gaming machine. |
| **Golden** | a cashout or jackpot amount resulting from game playing on a gaming machine |
| **Herbst** | paper money, currency, paper scrip or a coupon, equal to the amount of a cash-out or jackpot from a gaming machine |

The starting point for any claim construction is the claim language itself. *See Vitronics*, 90 F.3d at 1582. Here, the parties agree that the claim language requires a "payout" to be the result of play on a gaming machine because that is what the patents concern. However, the parties disagree on two matters. First, they dispute whether a payout can encompass some type of payment other than cash money currency. Second, they disagree whether a payout can encompass a partial payment, or only a single amount from a cashout or jackpot.

Initially, the court finds that there is no language in the claims or specifications that limits the payout to only cash money currency. Rather, the specification provides that a payout may compromise "paper money currency, paper scrip, a coupon, of any other desired item to be dispensed." '998 Patent, Col. 6, l.9-11. Therefore, the proper construction of payout includes forms of payment other than cash money currency. *Phillips*, 415 F.3d at 1323 (holding that a court

---

[2] The parties' proposed constructions are taken from their opening *Markman* claim construction briefs (Doc. ##60, 61, 77).

6

may interpret the meaning of a claim by the direct language of the specification). Accordingly, the court will accept and embody United Coin's construction of payout as it relates to other possible forms of payment.

Further, the court finds that there is no language in the patents that specifically restricts a payout to cashouts or jackpots. The phrasing of claim 1 of the patents does not place any limitation upon the term "payout" restricting it to only a cashout or jackpot.

In opposition, Golden and Herbst contend that payout is implicitly limited in the patent to a cashout or jackpot because there is no detailed description of any embodiment involving a payout other than a cashout or jackpot amount. For example, the preferred embodiments include:

- "The gaming machines may include coin hoppers for receiving coins for game play and for storing coins for payment of payouts such as *cashouts and/or jackpots resulting from the play of the game*." '998 Patent, Col 3., l.21-24 (emphasis added).
- "The payout indicating device may comprise a gaming machine . . . for indicating that a payout is payable for example responsive to a *"cashout"* or *"jackpot" resulting from the play of a game in the gaming machine*." Col. 6, l.40-45 (emphasis added).

Thus, defendants argue that the consistent descriptions in the preferred embodiments identifying payout as a cashout or jackpot would cause a person skilled in the art to conclude that payout is restricted in such a way. *See Phillips*, 415 F.3d at 1313 (holding that a claim should be construed to include "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention.")

However, defendants' proposed constructions improperly eliminate language from the patent specifications. The term payout, as provided in the specifications, "may constitute payment of all or part of an amount to be paid out, and/or may enable payment of all or part of an amount to be paid out." '998 Patent, Col. 6, l.11-14. Defendants' limitation prevents United Coin's patent from covering partial payments from the cash dispensing system which is clearly contemplated in the specifications. *See Merck & Co.*, 347 F.3d at 1371 (the claims must be construed so as to be consistent with the specifications). Further, defendants' construction seeks to import a limitation

7

into the claim from specification language which provides only examples of possible payouts.

Such a construction cannot be accepted by the court. *Phillips*, 415 F.3d at 1323 (holding that a

court cannot import limitations from the specification into the claim). Accordingly, the court

agrees with and adopts United Coin's construction of "payout."

### B. Payout Breakage Dispenser/Device[3]

*Claim 18* ('180 patent)

> 18. The system of claim 1, wherein the payout dispenser stores and dispenses a payout in a payout dispenser denomination, and wherein the system further comprises a **payout breakage dispenser** that dispenses payout breakage denominations small than the payout dispenser denomination.

*Claim 85* ('998 and '180 patents)

> 85. The method of claim 82, wherein the payout dispenser is adapted to store and dispense a payout dispenser denomination, further comprising a device for enabling the dispensing of a payout breakage in a payout breakage denomination smaller that the payout dispenser denomination, and wherein storing further comprises storing a payout of a particular denomination in the payout dispenser, and storing a denomination small that the particular denomination in the **payout breakage device**, further comprising dispensing the payout of a particular denomination from the payout dispenser, and dispensing the denomination smaller that the particular denomination from the **payout breakage device**.

| PROPOSED CONSTRUCTIONS | |
|---|---|
| **United Coin / Golden** | a device for enabling the dispensing of payout breakage, such as for example a retail register |
| **Herbst** | a device for storing and dispensing only those payout denominations which are smaller than the denominations stored in the payout dispenser |

Herbst argues that the term payout breakage dispenser/device should be construed to

include language that limits the device to only containing payout denominations which are smaller

than the denominations in the payout dispenser. Herbst relies on the summary of the invention

---

[3] The term "payout breakage dispenser" appears only in the '180 patent. The term "payout breakage device" appears in both the '998 and '180 patent.

which provides that:

- "The system may further include a device for enabling the dispensing of a payout breakage amount, which is the difference between the payout in the payout dispenser denomination and the payment to be paid out, *in a payout breakage denomination smaller than the payout dispenser denomination.*" '988 Patent, Col. 4, l.19-24 (emphasis added).

Herbst's proposed construction improperly limits the term beyond the claim language and specifications. The language of the claims recites no restrictions or limitations on what denominations the payout breakage device may contain. Further, nowhere in the claims do they mention specific monetary denominations whatsoever. Rather, the claim language only states that for any specific payout, the payout breakage dispenser/device dispenses at least one denomination smaller than the "particular denomination" from the payout dispenser. *See* '998 Patent, Claim 85. Accordingly, the court finds that Herbst's proposed limitation that the payout breakage dispenser/device can only contain smaller monetary denominations than the payout dispenser is inconsistent with the plain language of the claim. *See Vitronics*, 90 F.3d at 1582 (the starting point for any claim construction is the claim language itself).

Although the plain language of the claim is without limitation, Herbst argues that the preferred embodiments of the '998 and '180 patent contemplate only smaller denominations in the payout breakage dispenser/device. *See* '998 Patent, Col. 4, l.19-24 ("in a payout breakage denomination smaller than the payout dispenser denomination"). Thus, Herbst argues that in light of the preferred embodiment, its construction is the only construction that aligns with the patent specification. However, the preferred embodiment does not state that only smaller denominations can be or are required to be placed in and dispensed from the payout breakage dispenser/device. Rather, the specification states that they are denominations in the payout breakage dispenser/device which are smaller than those in the payout dispenser. *See* '998 Patent, Col. 4, l.19-24. Thus, Herbst's construction improperly imports limitations from the specification that are not in the patent itself. Accordingly, the court finds that Herbst's proposed limitation that the

payout breakage dispenser/device can only contain smaller monetary denominations than the payout dispenser is inconsistent with the patent specification. *See Phillips*, 415 F.3d at 1323 (holding that a court cannot import limitations from the specification into the claim).

Additionally, Herbst argues that its construction of payout breakage dispenser/device is appropriate because if the breakage dispenser could include similar payout denominations as the payout dispenser then there would be no purpose to have two separate payout devices. However, the Federal Circuit has cautioned against such reasoning, finding that "[t]he court's task is not to limit the language to exclude particular devices because they do not serve a perceived 'purpose' of the invention." *E-Pass Techs., Inc. v. 3Com Corp.*, 343 F.3d 1364, 1370 (Fed. Cir. 2003).

In summary, there is nothing in the claim language or specification that limits the monetary denominations that can be placed in the payout breakage dispenser/device. Thus, the payout breakage dispenser/device may encompass monetary denominations that could be included in the payout dispenser. *See Phillips*, 415 F.3d at 1316 ("The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction.") (quoting *Renishaw PLC v. Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998)). Accordingly, the court agrees with United Coin's construction of payout breakage dispenser/device and adopts that construction.

**C. Central**

*Claim 37*

> 37. A system for securely storing and controlling the dispensing of a payout comprising:
> a **central** station, for centrally controlling the dispensing of a payout, including a **central** terminal . . .

| PROPOSED CONSTRUCTIONS | |
|---|---|
| **United Coin** | remote |
| **Herbst** | off-site |

10

United Coin's construction derives from its interpretation that central can mean remote from the local site and is based on the direct language of the patent specifications. Specifically, the specifications state:

- "The system constitutes an automated payment system adapted to connect a plurality of payout indicating devices such as gaming machines in a *remote location* to a central terminal such as a main frame computer, to enable payments to be made for winnings and/or cash outs posted on the gaming machines." '998 Patent, Col. 15, l.26-32 (emphasis added).
- "Pursuant to the invention, in a route system with the spread out locations where dispensers are located *remotely* from each other, the system enables the convenient and efficient supplying of sufficient payouts for secure storing and automatic verified dispensing thereof." Col. 15, l.55-60 (emphasis added).

Herbst argues, however, that central must mean off-site because that is the ordinary use of the term when compared with the parties' stipulated construction of "local" meaning on-site. The court finds that United Coin's interpretation and construction better accords with the patent specifications which directly reference remote terminals rather than off-site terminals. Accordingly, the court adopts United Coin's construction of central.

**IV. Conclusion**

IT IS THEREFORE ORDERED that the disputed claim terms are to be construed consistent with the court's order herewith.

IT IS SO ORDERED.

DATED this 16th day of August, 2010.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE